# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **TERESA ECKHARDT,** individually, and as Administrator of the Estate of her Late Husband, Gary Paul Eckhardt,<br><br>*Plaintiff*,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>*Defendant*. | **CIVIL ACTION NO.<br>5:19-cv-00266-TES** |

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Before the Court is Plaintiff's Motion to Compel [Doc. 35], whereby she seeks an order requiring the United States of America ("Defendant" or the "VA")[1] to produce documents and information specific to her discovery requests. *See generally* [Doc. 35]. Defendant opposes this Motion. *See generally* [Doc. 39]. For the reasons discussed below the Court **DENIES**[2] Plaintiff's Motion to Compel [Doc. 35].

## BACKGROUND

Plaintiff filed this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b),

---

[1] This action is brought against the United States Department of Veterans Affairs (the "VA") via the United States of America.

[2] While the Court ultimately **DENIES** Plaintiff's Motion to Compel [Doc. 35], it still orders Defendant to produce a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5)(A) for information that Defendant claims to withhold based upon attorney-client privilege or the work product doctrine as it relates to Plaintiff's Request for Production of Documents ("RPD") No. 7.

2671–80, against Defendant for the wrongful death of her husband, Gary Eckhardt ("Mr. Eckhardt"), a Vietnam Veteran. [Doc. 3]. Because of his service, Mr. Eckhardt earned the right to receive medical treatment through the Department of Veterans Affairs (the "VA"). [*Id.* at ¶ 9]. He primarily received such treatment at the VA Medical Center in Atlanta, Georgia, and the Carl Vinson VA Medical Center in Dublin, Georgia. [*Id.*]. In April 2003, Mr. Eckhardt was diagnosed with hepatitis c by the medical professionals at the VA Medical Center in Atlanta. [*Id.* at ¶ 10]. Plaintiff ultimately claims that it was the failure on the part of the VA to effectively treat Mr. Eckhardt's hepatitis c with available curative drug therapies that caused his premature death. [*Id.* at ¶¶ 16, 18–28].

The parties have had considerable time to engage in discovery and gather evidence regarding this claim.[3] Discovery in this matter is currently closed.[4] Regardless, the instant Motion is brought pursuant to a discovery-related dispute.[5] On February 25, 2020, Plaintiff served Defendant with her first Request for Production of Documents ("RPD"). [Doc. 35-1, pp. 4–11].

---

[3] The Court entered a Scheduling Order allowing a seven-month discovery period to begin on October 28, 2019 and end on May 26, 2020. [Doc. 11]. Throughout this litigation, the parties have jointly moved to extend the discovery deadline. *See* [Doc. 11]; [Doc. 22]; [Doc. 25].

[4] Discovery in this matter closed on November 23, 2020. However, the Court also stated that upon resolution of Plaintiff's Motion to Compel, it would allow the parties an additional 60 days to conduct discovery. *See* [Doc. 26]; [Doc. 32]. In total, the parties will have had nearly fifteen months to conduct discovery. *See* [Doc. 10]; [Doc. 11]; [Doc. 26]; [Doc. 32].

[5] This is not the first discovery-related dispute that necessitated judicial intervention. The first dispute involved parties' access to postings on a social media site, and the second dispute involved an extension of the discovery period. *See* [Doc. 24]; [Doc. 27]; [Doc. 28].

In response, on May 20, 2020, Defendant provided Plaintiff with its first document production, consisting of Mr. Eckhardt's medical records. *See* [Doc. 35, p. 2]; [Doc. 39, p. 3]. Plaintiff then mailed Defendant a Rule 37 letter detailing the perceived deficiencies with Defendant's document production and demanding compliance with her requests by June 22, 2020. [Doc. 35-1]. In turn, Defendant provided Plaintiff with subsequent document productions, equating to nine document productions in total (three of which are filed with the Court). *See* [Doc. 44]; [Doc. 46]; [Doc. 47].

However, such document productions appear to have been insufficient in meeting Plaintiff's discovery expectations. Plaintiff mailed Defendant a second Rule 37 letter once again detailing her perceived deficiencies in its responses to the RPDs. [Doc. 35-2]. And then, on September 17, 2020, Plaintiff mailed a third Rule 37 letter to Defendant, the substance of which largely mirrors the content of the instant Motion to Compel. *Compare* [Doc. 35-3], *with* [Doc. 35].

In this third letter, Plaintiff mainly takes issue with Defendant's production of documents in response to RPD Nos. 7, 9, and 12. *See generally* [Doc. 35-3, pp. 1–3]. First, Plaintiff claims that Defendant failed to produce all documents in its possession inclusive of her requests. [*Id.*]. And second, for each of the aforementioned RPDs, Plaintiff set forth a list of documents that she expected to receive from Defendant by September 24, 2020. [*Id.*]. On November 2, 2020, Defendant responded to this letter detailing its objections to the further production of documents and providing a

3

catalogue of all documents already produced in response to RPD Nos. 7, 9, and 12. *See generally* [Doc. 35-4].

Once again, it appears that this response was not sufficient to resolve the burgeoning discovery dispute. Soon thereafter, Plaintiff filed this Motion to Compel, whereby she largely reiterated those allegations set forth in her third Rule 37 letter. [Doc. 35]. In brief summation, those allegations center on Defendant's failure to respond in full to Plaintiff's discovery requests, specifically RPD Nos. 7, 9, and 12. [*Id.*]. Defendant responded in opposition. *See generally* [Doc. 39].

## **DISCUSSION**

### A.     **Relevant Legal Standard**

As noted, the issue before the Court is one regarding discovery. Federal Rule of Civil Procedure 26(b)(1) outlines the general scope of discovery. Therefore, the Court starts there. Rule 26(b)(1) states as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Based upon this language, the scope of discovery is generally broadly construed. *See Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *see also Farnsworth*

*v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (noting that the Rules "strongly favor full discovery whenever possible[]").To resolve discovery disputes, courts engage in a two-step inquiry to determine whether information sought by a party is discoverable. The information must be (1) relevant; and (2) proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

To be relevant, the information need only have a "tendency to make the existence of any fact or consequence more or less probable than it would be *without the evidence*." *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 676 (S.D. Ga. 2016) (quoting *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013)). "[T]he relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). To be proportional, the relevant information must be "discoverable in view of the needs of the case." *Fox v. Gen. Motors LLC*, No. 1:17-CV-209-MHC, 2019 WL 3503754, at *1 (N.D. Ga. Jan. 18, 2019) (quoting *Koster v. Landmark Am. Ins. Co.*, No. 5:14-CV-689-OC-37PRL, 2016 WL 3014605, at *2 (M.D. Fla. May 20, 2016)).

If a party fails to respond to discovery requests, the opposing party may move to compel discovery responses pursuant to Federal Rule of Civil Procedure 37(a)(1). "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Cottone v. Cottone*, No. 1:15-CV-3584-MHC, 2017 WL

5

9250366, at *2 (N.D. Ga. Oct. 11, 2017) (citations omitted). As relevant to this action, Plaintiff claims that Defendant failed to provide complete responses to RPD Nos. 7, 9, and 12. She specifically moves to compel the production of documents that she deems are inclusive in these requests. Defendant objects. The Court considers each argument in light of the foregoing standard.

### B. Plaintiff's Requests for Production

#### 1. RPD No. 7

Plaintiff first moves the Court to compel Defendant to produce the following documents in response to RPD No. 7:

> All documents evidencing any procedure, protocol, policy, or guideline addressing the following:
>
> a) Table of contents of any and guidelines, protocol, standards, procedures or the like regarding care and treatment of patients with Hepatitis C beginning in 2003 through the present, and
>
> b) All VA guidelines, treatment protocols, treatment alerts published by the VA from 1998–2015 that pertain to the care and treatment of Hepatitis C.

[Doc. 35]; [Doc. 35-1, pp. 6–7]. Plaintiff claims that Defendant failed to produce the following documents inclusive of this request:

1) Resource user guides that applied to Dublin VAMC in 2013, 2014 and 2015 as referenced in the Department of Veterans Affairs, Veterans Health Administration Liver Telehealth Resource Guide, September 2012;
2) VA Hepatitis C Directives in effect during the years 2012 through 2015, including but not limited to, all pharmacy directives relating to the treatment of Hepatitis C; and

6

> 3) VA SCAN-ECHO guidelines that were being used within the VA in 2013 and 2014.

[Doc. 35, pp. 4–5]. As the Court noted in its presentation of this action's background, the instant Motion is not the first time that Plaintiff has alleged Defendant's failure to respond in full to RPD No. 7. *See* [Doc. 35-1]; [Doc. 35-2, pp. 1–7]; [Doc. 35-3, pp. 1–3]. Nor is this the first time that Defendant has responded to such allegations. *See* [Doc. 35-4]. However, at this point in proceedings, Plaintiff seeks judicial action to compel the production of documents that she claims exist but have not yet been produced by Defendant. [Doc. 35, p. 3]; [Doc. 49, p. 1 n.1 ("As set forth and identified in Plaintiff's Motion to Compel, the requested documents and information clearly exist but for reasons known only to the Defendant have not been produced to Plaintiff.")].

This litigation is replete with commentary by Plaintiff regarding her belief that Defendant has responsive documents in its possession that it simply refuses to provide her. *See* [Doc. 35, p. 3 n.2 ("Plaintiff's second Rule 37 letter to Defendant . . .was a good faith attempt to resolve the outstanding discovery dispute involving Defendant's ongoing failure to produce documents that are clearly in the Defendant's possession[.]")]; [Doc. 35, p. 3 n.3 (" . . . Defendant has engaged in an ongoing attempt to stonewall and deny Plaintiff the requested information that is in Defendant's possession, but not accessible by the public.")];

[Doc. 49, p. 1 n.1 ("[W]hile Defendant has produced quantity, it has failed to produce quality. Defendant has failed to produce documents and information in its possession that are most germane to the issues in this case.")].

The Court does not take allegations of discovery misconduct lightly. However, mere allegations of misconduct—with nothing more—cannot support a finding that a party has committed a violation warranting judicial interference with the discovery process. And, unfortunately for Plaintiff, her Motion is long on accusations and short on supporting evidence.

In answer to these accusations, Defendant first argues that it has produced a voluminous record in response to RPD No. 7. *See* [Doc. 39, p. 8 (citing Doc. 35-4, pp. 2–3)]. Despite providing such a record, Defendant, in its own words, sought to "avoid a formal discovery dispute" with Plaintiff by producing additional documentation that it deemed to be non-discoverable. [*Id.* at p. 10 (citing Doc. 35-4, pp. 3–4)]. Defendant has even provided Plaintiff with an itemized list of all responsive documents provided. [*Id.* at p. 8 (citing Doc. 35-4, pp. 2–3)].

And yet, Plaintiff still accuses Defendant of withholding discoverable documentation. *See e.,g.*, [Doc. 49, p. 4 ("To the extent that Defendant contends it does not possess or have access to further relevant documents concerning SCAN-ECHO, Plaintiff's investigation shows that Defendant likely does in fact posses or

8

have access to said documents.")]. Plaintiff largely suspects that *additional* responsive documentation exists on the basis that (1) Defendant failed to provide a privilege log cataloguing the alleged privileged[6] documentation not disclosed; and (2) Defendant failed to explain or describe the parameters of its search[7] through VA records to identify and locate documentation responsive to RPD No. 7. *See* [Doc. 35, p. 4].

Regarding Plaintiff's first point, to the extent that Defendant *has* in fact withheld documents responsive to RPD No. 7 based on attorney-client privilege or work product protection, it will, within 14 days of entry of this Order, provide Plaintiff with a privilege log setting forth the documents it alleges is protected by the applicable privilege. And, in that same vein, if Defendant claims *not* to have withheld documents based on any privilege, then it must produce a statement on the record attesting to that very fact within the aforementioned timeframe.

---

[6] Plaintiff claims that Defendant initially objected to RPD No. 7 on the basis that some of the requested documents "were protected by attorney-client or work product privilege or protected from disclosure pursuant to 38 U.S.C. § 5705." [Doc. 35, p. 4]. However, Plaintiff claims that she is unable to determine whether her requested documents have actually been withheld on the basis of privilege because Defendant failed to include a privilege log. [*Id.*]. As noted in n.1, *supra*, Defendant will shortly remedy this deficiency.

[7] Plaintiff's allegation is presented in its entirety as follows:
> [I]n response to [RPD] No. 7, the USA purported to produce "non-privileged documents retrieved from a reasonable search of the files of VA records, which may be responsive to [RPD] No. 7" as part of the USA's "second document production" (USA_001477-USA_002274). The USA provided no explanation or description of the parameters of its purported "reasonable search" and the Plaintiff has no way of knowing what search terms were used or which VA records were searched.

[Doc. 35, p. 4].

Now, as to Plaintiff's second point, it appears that Defendant has attempted to correct any alleged failure on its part to inform Plaintiff about the parameters of its searches to identify and locate relevant documentation regarding telehealth materials, resource user guides, and SCAN-ECHO documentation.[8] *See* [Doc. 39-1]; [Doc. 39-2]; [Doc. 39-3]. Based upon sworn

---

[8] For example, Defendant attached the sworn declaration of the Risk Manager of the Office of Quality, Safety & Value at the Carl Vinson VA Medical Center, who recounted her search efforts to provide supplemental documentation in response to Plaintiff's RPD No. 7. [Doc. 39-2]. She swears that she performed the following efforts to search for such documentation:

    A. I conducted a review of all resource user guides that applied to Dublin VAMC in 2013, 2014, and 2015 as referenced in the Department of Veterans Affairs, Veterans Health Administration Liver Telehealth Resource Guide, September 2012.
    B. In my search to locate responsive documents, I accessed the Dublin VAMC's intranet to search within the Medical Center Policy Library. I also contacted the VA Central Office Program Office, VHACO 1084 Forms and Publication Office, and the VA Office of Regulatory and Administrative Affairs (1084).
    C. I searched all VA Hepatitis C Directives in effect during the years 2012 through 2015, including but not limited to, all pharmacy directives relating to the treatment of Hepatitis C and
        i. I contacted the Office of the Deputy Director, HIV, hepatitis and Related Conditions Programs Office of Specialty Care Services. No additional documents were obtained.
        ii. I contacted the Office of the National Director, HIV, Hepatitis, and Related Conditions Programs Office of Specialty Care Services (10P11). No additional documents were obtained.
        iii. Other VA internal resources utilized for this request: Pharmacy Benefits Management Services Website and VA National Formulary Website.
    D. I searched all VA SCAN-ECHO guidelines that were being used within the VA in 2013 and 2014 and
        i. I contacted the Office of Deputy Director, HIV, Hepatitis and Related Conditions Program Specialty Care Services. No additional documents were obtained.
        ii. Other VA internal resources examined related to this request:
            VA Internal Resources →Department of Veterans Affairs Office of Public Affairs News Release
            VA Internal Resources → https://academic.oup.com/painmedicine/article/19/2/262/3835967
            VA Internal Resources → Research Docs - Department of Veterans Affairs (VA) Program Announcement

declarations submitted by VA personnel and staff, it appears to the Court that Defendant has made considerable efforts to comb through its records in search of responsive documentation. *See e.g.*, [Doc. 39-1, ¶¶ 2–4 (listing efforts to search and identify supplemental information requested by Plaintiff]; [Doc. 39-2, ¶ 3 (listing efforts to identify and produce supplemental information as related to RPD No. 7)]; [Doc. 39-3, ¶¶ 3–4 (listing efforts to search and identify supplemental resource user guides, SCAN-ECHO guidelines, and relevant VA directives requested by Plaintiff)]. And it appears that Defendant declares under penalty of perjury to have produced the relevant documentation uncovered through these efforts. Despite this showing, Plaintiff still asserts the belief that

---

VA Internal Resources → Research Docs – Department of Veterans Affairs (VA) Program Announcement- Fact Sheet
VA Internal Resources →Research Docs – Veterans Health Administration (VHA) Office of Rural Health Information Document
VA Internal Resources →Research doc- https://www.mdpi.com/journal/futureinternet-Future Internet 2015, 7, 184-195; doi:10.3390/fi7020184
You Tube Presentation July 16, 2013
Veteran's Health Administration presenter Dr. Trish Dr. Kirsh, VA's Clinical Advisor of Specialty Care provides an overview of VA's SCAN-ECHO program→ Press: control tab + link →
https://www.youtube.com/watch?v=i-JU298C1ss
VA Internal Resources: Office of Rural Health within the VHA, *Rural Expansion of Specialty Care Access Networks Extension for Community Health Care Outcomes (SCAN-ECHO)*, Request for Proposals, November 2012, p. 1.
VHA Office of Rural Health -https://www.ruralhealth.va.gov/→ Program & Research →Support→ Newsletter.
[Doc. 39-2, pp. 2–3].

additional documentation exists, but again, offers little to explain exactly why she believes this to be true. Absent the production of a privilege log, there is not much more that Defendant can do to alleviate Plaintiff's concerns that it has produced all documents in its possession responsive to RPD No. 7. Based upon the Defendant's representations, at this stage, the Court finds that compelling the production of further documentation responsive to RPD No. 7 would be futile.[9]

Therefore, the Court **ORDERS** Defendant—insofar that it has withheld documents on the basis of privilege—to produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5)(A) within 14 days of entry of this

---

[9] In further support of this ruling, the Court finds that additional discovery regarding RPD No. 7 would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (noting that the discovery sought must be "proportional to the needs of the case," and the Court will consider such factors as "the parties' relative access to relevant information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."). The Court does not dispute the importance of the issue in this action—Mr. Eckhardt's premature death due to the VA's alleged negligent care. However, Defendant has already produced a voluminous amount of materials in response to Plaintiff's RPDs regarding this issue. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (citation omitted) ("Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied."). Plaintiff even admits as much and mainly takes issue with the alleged *quality* of the materials. *See* [Doc. 49, p. 1 n. 1 ("[W]hile Defendant has produced quantity, it has failed to produce quality.")]. However, as discussed above, it appears that Plaintiff largely moves to compel on the unsubstantiated suspicion that Defendant has withheld documents from her., Defendant has already submitted sworn statements from several VA personnel and staff who have detailed their expenditures in trying to locate documents responsive to Plaintiff's RPDs. *See* [Doc. 39-1]; [Doc. 39-2]; [Doc. 39-3]. To require Defendant to engage in an extensive review of VA records to confirm that it does not have the documents in its possession that Plaintiff requests, is disproportional to the needs of this case. "Authorizing the search for the proverbial needle in the haystack is inconsistent with the proportionality considerations underlying Rule 26." *See Echols v. Pilgrim's Pride Corp.*, 464 F. Supp. 3d 1340, 1346 (M.D. Ga. 2020).

Order. Beyond this specialized instruction, the Court **DENIES** Plaintiff's Motion to Compel as to RPD No. 7.

2. RPD. No. 9

Next, Plaintiff claims that Defendant failed to respond in full to RPD No. 9, which states as follows:

> Please produce all web based training, alert, and treatment protocols that were generated from the HCCR for use nationally and at Atlanta and Dublin VA facilities for medical providers treating Hepatitis C patients and also any alerts or guidelines generated specifically for the care and treatment of Gary Paul Eckhart during the time period 2003–2015.
>
> For reference the Hepatitis C Case Registry known as the "HCCR" with all national and local reports is documented in the publication, "Clinical Case Registries: Simultaneous Local and National Disease Registries for Population Quality Management" Journal of American Informatics Association Volume 16 No. 6 November/December 2009 containing the data on 424,104 local registry patients and 324,065 unique patients in the Hepatitis C database.

[Doc. 35-1, pp. 7–8]. In turn, Defendant "objected to Plaintiff's [RPD] No. 9 on numerous grounds while producing what it described as 'non-privileged documents retrieved from a reasonable search of VA records'[.]" [Doc. 35, pp. 6–7]. However, Plaintiff alleges that Defendant's response is incomplete, and specifically requests the production of the following documents:

> (1) All emails sent by the VA to VHA Hepatitis C coordinators during the years 2011 through 2015, including any and all emails sent using a VHA intranet or similar system;

> (2) All documents and records relating to telehealth resources available for the treatment of Hepatitis C that were accessible on any VHA intranet during the years 2012 through 2014 . . .; and
>
> (3) All Data Collection and Resources reports, as defined by the Department of Veterans Affairs, Veterans Health Administration Liver Telehealth Resource Guide, September 2012, for the years 2013, 2014 and 2015.

[*Id.* at p. 7]. Once again, Defendant first addressed this allegation in a letter to Plaintiff on November 22, 2020, whereby its counsel provided a list of responsive documentation already produced for RPD No. 9. [Doc. 35-4, pp. 4–5]. Now, in response to the instant Motion to Compel, Defendant has provided Plaintiff with a detailed list of its search efforts[10] to locate additional, relevant documentation. *See* [Doc. 39-2, pp. 3–4]. And most importantly, Defendant claims that through these efforts it "has not identified any additional documentation responsive to RPD No. 9." [Doc. 39, p. 14]. Upon accepting this representation as true, the Court finds that compelling the production of documents in response to RPD No. 9 would be futile. *See SMS Audio, LLC v. Belson*, No. 9:16-cv-81308, 2016 WL 8813842, at *1 (S.D. Fla. Dec. 29, 2016) (denying the plaintiff's motion to compel upon the court accepting Defendants' representation that they have no other documents responsive to the plaintiff's request). The Court **DENIES** Plaintiff's Motion to Compel as to RPD No. 9.

---

[10] It appears that one of the reasons that Plaintiff alleges that Defendant has withheld responsive documents is because "[she] does not know the specifics of Defendant's search." [Doc. 35, p. 7].

14

3. RPD No. 12

Plaintiff moves to compel the production of "all medical and other records regarding Gary Eckhardt stored in the VA CPRS and Vista computer systems." [Doc. 35, p. 8]. While Defendant claims to have produced all relevant documents in its possession, Plaintiff argues that she has not received the following documentation inclusive in her original request:

> (1) All appointment reminders sent to Gary Eckhardt via postal mail, e-mail or text messages (as referenced in the Department of Veterans Affairs, Veterans Health Administration Liver Telehealth Resource Guide, September 2012);
> (2) All pharmacy records relating to Gary Eckhardt; and
> (3) All entries for Gary Eckhardt in the VA HCCR hepatitis C database or dashboards including but not limited to Fib-4 scores, APRI scores, liver function tests (AST and ALT), bilirubin, total protein, albumin, platelet counts, and other recorded lab values and imaging test results.

[*Id.* at p. 8]. In the instant Motion, Plaintiff claims that Defendant "has produced only a limited number of pharmacy records for Mr. Eckhardt and has not produced any appointment reminders sent to Mr. Eckhardt or records pertaining to him from the VA HCCR hepatitis C database or dashboards." [*Id.* at p. 9]. She argues that these documents are necessary to show Defendant's alleged failure to treat Mr. Eckhardt's hepatitis c. [*Id.*].

This argument could very well be true. However, the Court finds that it would be futile to consider such an argument because, regardless of its finding on that matter, it cannot compel documents not in a party's possession, custody or control. *See*

*Bloodworth v. U.S.*, 623 F. App'x 976, 979 (11th Cir. 2015) ("A party does not have authority to compel the production of documents outside the possession, control, or custody of a party to the case through a motion to compel under Rule 37."); *see also Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan. 2004) (denying a motion to compel production of documents where the defendants stated that they had responded fully to plaintiff's requests and therefore had no additional documents in their possession to produce).

Defendant claims that Mr. Eckhardt's pharmacy records and those records contained in the VA HCCR hepatitis c database/dashboard have been produced in full. *See e.g.*, [Doc. 39, p. 16 ("The VA produced all of Mr. Eckhardt's pharmacy records.")]. Defendant has attached declarations from VA medical personnel swearing to the truth of this claim. For example, one such statement reads as follows:

> With regard to Mr. Eckhardt's pharmacy records and Mr. Eckhardt's VA HCCR hepatitis C database or dashboards, including but not limited to, Fib4 scores, APRI scores, liver function tests (AST and ALT), bilirubin, total protein, albumin, platelet counts, and other recorded lab values and imaging test results, we again note Mr. Eckhardt's medical records are responsive to this request and have been produced in discovery. These medical records are in possession of Plaintiff's counsel. The VA has identified no additional medical records pertaining to Mr. Eckhardt that have not already been produced.

[Doc. 39-2, ¶ 7]. As to Plaintiff's contention that Defendant failed to produce all of Mr. Eckhardt's appointment reminders, Defendant once again claims to have produced this

documentation in full.[11] *See* [Doc. 39-2, ¶ 6 ("[W]e searched Mr. Eckhardt's medi[c]al records and all notices within the VA's custody or control are embedded in Mr. Eckhardt's medical records, as produced from the VA's Vista system.")]. In response to these sworn representations, Plaintiff has failed to show that Defendant has additional documents in its possession regarding RPD No. 12 that it has refused to produce. And, if Plaintiff questioned the veracity of these representations, then her counsel needed to provide sufficient information in support of that position. *See Sonnino*, 220 F.R.D. at 640. As it stands, the Court finds that issuing an order to compel the production of these requested documents would be futile and therefore **DENIES** Plaintiff's Motion to Compel as to RPD No. 12.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Compel [Doc. 35].

**SO ORDERED**, this 17th day of June, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[11] Defendant made its first document production on May 20, 2020 whereby it produced 1,476 pages of Mr. Eckhardt's medical records. *See* [Doc. 35, p. 2]; [Doc. 39, p. 3]; [Doc. 43].

17